IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| R.C. by his next friend, the ALABAMA DISABILITIES ADVOCACY, PROGRAM, on behalf of himself and those similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION 2:88cv1170-ID [WO] |
| PAGE WALLEY, as Commissioner of the Alabama Department of Human Resources, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. No. 851), filed pursuant to 42 U.S.C. § 1988, the Consent Decree and the court's Memorandum Opinion and Order entered in this case on January 16, 2007. The Motion is accompanied by a Memorandum of Law and an Evidentiary Submission. (Doc. Nos. 852- 865.) Defendant filed a Response,[1] and Plaintiffs submitted a Reply. (Doc. Nos. 870, 872.)

---

[1] Defendant was sued in his capacity as the commissioner of the Alabama Department of Human Resources ("DHR"). Because a lawsuit against a public official in his official capacity is, in effect, a suit against the underlying public entity, the court refers to "Defendant" and "DHR" interchangeably.

This lawsuit concluded with the Eleventh Circuit's affirmance and mandate entered on April 29, 2008. This opinion addresses only the outstanding dispute between the parties concerning Plaintiffs' recovery of reasonable attorneys' fees and expenses spanning October 2004 to January 2007. While the parties have long agreed that Plaintiffs are the "prevailing parties" and, thus, entitled to recover reasonable attorneys' fees and expenses, they disagree as to what is reasonable. (See Consent Decree ¶ 88, entered June 11, 1991 (Doc. No. 235)); (Def. Resp. at 12 (Doc. No. 870).) In all, Plaintiffs assert that the disputed attorneys' fees amount to $201,989.75 and that the disputed expenses add up to $39,977.91, for a total of $241,967.66. Responding to the Motion, Defendant indicates that, subsequent to Plaintiffs filing their Motion for Attorneys' Fees and Costs, DHR approved and paid a portion of the fees and expenses requested in the Motion, thereby decreasing the sum of the contested fees and expenses to $179,779.36.[2] (Def. Resp. at 4 (Doc. No. 870).) As to the $179,779.36, Defendant's short answer is that DHR "adequately and fairly has paid Plaintiffs' counsel for all reasonable work and expenses" and that no "additional money is due to them." (Id. at 1.) After careful consideration of the arguments of counsel, the relevant law and the material evidence, the court finds that Plaintiffs' Motion is due to be granted in part and denied in part.

---

[2] Plaintiffs have not challenged Defendant's assertions of payment or disputed the lower figure, so the court assumes that $179,779.36 represents the disputed amount of fees and expenses for the period of time in question.

2

## II.  BACKGROUND

The background of this case is fully documented in the court's prior memorandum opinions and orders and the Eleventh Circuit's opinion affirming this court's judgment. (See Mem. Op. & Order, filed May 2005 (Doc. No. 752)); (Mem. Op. & Order, filed Jan. 2007 (Doc. No. 849)); (Per Curiam Op., filed March 2008 (Doc. No. 873).)[3]  That background need not be recounted here, as the parties are intimately familiar with this litigation's details.  The payment of Plaintiffs' attorneys' fees and costs, which presently is at issue, has been addressed in the Consent Decree and prior orders of the court.  (See, e.g., Consent Decree ¶¶ 88-90 (Doc. No. 235)); (Mem. Op. & Order, filed Oct. 1997 (Doc. No. 438)); (Letter memorializing fee agreement reached in mediation, dated April 15, 1998 (Def. Ex. 1 to Doc. No. 870)); (Order ¶ 4, filed Nov. 2003 (Doc. No. 687)); (Mem. Op. & Order, filed Jan. 2007 (Doc. No. 849).)

## III.  DISCUSSION

### A.  Reasonable Attorneys' Fees

To determine a prevailing party's reasonable attorneys' fees, the court begins by multiplying the reasonable hourly rate by the hours reasonably expended.  This figure, called the "lodestar," represents a presumptively reasonable fee, and the burden of

---

[3] This court's opinions are published, and the Eleventh Circuit's opinion is available online.  See R.C. v. Walley, No. 07-10667, 2008 WL 816679 (11th Cir. 2008) (per curiam) (unpublished); R.C. v. Walley, 475 F. Supp.2d 1118 (M.D. Ala. 2007); and R.C. v. Walley, 390 F. Supp.2d 1030 (M.D. Ala. 2005).

proving fees rests with the prevailing party.  Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299, 1303 (11th Cir. 1988).  In Norman, the Eleventh Circuit discussed the factors that apply to determine hourly rates and hours expended.  In its 1997 Memorandum Opinion and Order, this court set out the Norman factors, and it applies them here.  (See Mem. Op. & Order at 11-12 (Doc. No. 458).)  The court also is mindful that it has directed Plaintiffs to "endeavor to minimize their fees and expenses."  (Order ¶ 4 (Doc. No. 687).)

As stated, Defendant "does not contest the fact that, under the consent decree and the orders of the court, Plaintiffs' counsel are entitled to be reimbursed for reasonable attorneys' fees."[4]  (See Def. Resp. at 12 (Doc. No. 870).)  Defendant, though, maintains that the "key word" is "reasonable" and that Plaintiffs' present request is patently unreasonable as to both the hourly rates and the hours expended.

*1.  Hourly Rates*

Defendant argues that the requested hourly rates for Douglas Richard Miller Nazarian ($325), Ira A. Burnim ($325), James Arnold Tucker ($250), Jane Neiswender

---

[4] In fact, at least since 1998 with few exceptions, Plaintiffs have billed, and Defendant has paid, the requested attorneys' fees and expenses without the need for court intervention.  (See, e.g., Def. Resp. at 2-3 (Doc. No. 870).)  The court also recognizes, as Defendant points out, that for the disputed time period, *i.e.*, October 2004 to January 2007, Defendant has paid approximately 58 percent of the fees and expenses requested by Plaintiffs, and, as concerns fees, "Defendant has reimbursed Plaintiffs for the vast majority of the hours their counsel have worked on the case."  (Id. at 3-4.)

($250), Karen Bower ($250), A. Zimmerman ($140), and "other" counsel with the Alabama Disabilities Advocacy Program ($175) are unreasonable. (Def. Resp. at 8, 9 (Doc. No. 870)); (Pls. Mem. of Law at 7 (Doc. No. 852).) Defendant contends that Plaintiffs impermissibly and "unilaterally raised" the rates in October 2004 without court approval. (Def. Resp. at 9 (Doc. No. 870).) Defendant cites the court's Memorandum Opinion and Order, dated October 28, 1997, setting Mr. Burnim's rate at $250 and Mr. Tucker's rate at $175, and points out that, prior to October 2004, Plaintiffs billed "[o]ther [ADAP] attorneys . . . at the rate of $135.00 per hour." (Id.); (Mem. Op. & Order at 12 (Doc. No. 438).) Defendant urges the court to award fees at the rates provided in the 1997 Memorandum Opinion and Order. Defendant, though, made a similar argument in 1997, asserting that the agreed-upon fee range set out in the 1991 Consent Decree governed "all past and future attorneys' fees awarded in this matter." (See Mem. Op. & Order at 7 (Doc. No. 438).) The court rejected the argument then and raised the hourly rates. (Id. at 8-10.) The court rejects the argument again today.[5]

As the court stated in its 1997 Memorandum Opinion and Order, "[a] rate is reasonable if such rate 'is the prevailing market rate in the relevant legal community for

---

[5] With that said, the court notes that it would have preferred Plaintiffs to have brought the disputed issue of hourly rates to the court's attention when it first arose, rather than waiting almost two-and-a-half years. At the same time, though, the court is not persuaded, as argued by Defendant (see Def. Resp. at 12-13 (Doc. No. 870)), that Plaintiffs' delay amounts to a waiver of additional fees. (See, e.g., Letter memorializing fee agreement, placing responsibility jointly on the parties to submit certain fee disputes to the court (Def. Ex. 1 to Doc. No. 870).)

similar services by lawyers of reasonably comparable skills, experience, and reputation.'" (Id. at 11 (citation omitted)); see also Norman, 836 F.2d at 1299.  The court's 1997 ruling was predicated upon the "prevailing market rate" in a prior decade.  The "reasonable" rate in 1997 is not necessarily the "reasonable" rate for the years presently in question (*i.e.*, 2004-2007).  Moreover, in this long-running litigation involving institutional reform of DHR's child welfare system, the following principle espoused in Norman rings particularly true in this case:  "In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates."  836 F.2d at 1302.  For the reasons to follow, the court finds that Plaintiffs have demonstrated that the "prevailing market rates . . . have risen since 1997," but finds that Plaintiffs have not shown that the rates have increased to the levels requested.  (Pls. Mem. of Law at 13-22 (Doc. No. 852).)

     Against the backdrop of the court's familiarity with Plaintiffs' attorneys and their diligent work in this case, the court has considered the prevailing market rate as garnered by its own knowledge and experience.  See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  The court also has weighed the evidence concerning (1) customary fees in the relevant legal community, which is not Washington, D.C., but the State of Alabama (compare Pls. Mem. of Law at 21 with 1997 Mem. Op. & Order at 13), (2) counsel for

6

Plaintiffs' specialized skills and levels of experience[6] and (3) the tremendous time involved in representing Plaintiffs in this complex litigation which reduced the time Plaintiffs' attorneys were able to devote to other legal advocacy.  (See Pls. Mem. of Law at 24-28 (Doc. No. 852).)  Moreover, the court has factored into its decision the nature of the professional relationship which has been intense and extraordinary.  Counsel has shouldered great responsibility for the better part of two decades to a multitude of children who have had to depend completely upon counsel for success in this litigation.  To borrow from the Honorable Myron H. Thompson,

> It is no easy task to represent such a plaintiff class in a lawsuit that has been ongoing for so many years and in which there are multiple and complex legal issues.  It is also quite difficult to represent a class of plaintiffs who are unlikely to be able to 'voice' their interests themselves.

Wyatt v. Sawyer, 67 F. Supp.2d 1331, 1353 (M.D. Ala. 1999) (Thompson, J.) (ruling on a 42 U.S.C. § 1988 fee petition).  Based upon the above factors, the court finds a reasonable hourly rate to be $275 for Mr. Nazarian and Mr. Burnim, $225 for Mr.

---

[6] For instance, the court is very familiar with the extensive qualifications and expertise of Mr. Tucker, who has appeared before the court in this case more times than it can count.  As another example, Mr. Nazarian's high level of experience and expertise is set out in document number 772.  On the other hand, concerning Ms. Bower, Ms. Neiswender and Zimmerman, Plaintiffs have not documented their experience to the court's satisfaction.  Rather, in their brief, Plaintiffs indicate only that Ms. Neiswender and Zimmerman are "associates at Hogan & Hartson" and that Ms. Bower is a "Bazelon attorney."  (Pls. Mem. of Law at 15-16 (Doc. No. 852)); (Pls. Reply at 3 (Doc. No. 872)); (see also Def. Resp. at 8 (raising objections to fees claimed by Ms. Bower, Ms. Neiswender and Zimmerman (Doc. No. 870).)  The court, thus, does not know whether these three attorneys are established experienced practitioners, and, accordingly, the court has set their rates at the low end.  See Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984).

Tucker, and $135 for Ms. Neiswender, Ms. Bower, Ms. Zimmerman and "other" ADAP counsel. This ruling resolves the dispute concerning hourly rates.

*2. Hours Expended*

As to 580 hours claimed by Plaintiffs, Defendant has agreed that these hours are reasonable and has reimbursed Plaintiffs but, for the most part, at lower rates than the court has set today. (See Pls. Mem. of Law at 6, 30-31 (Doc. No. 852).) In accordance with the court's ruling in the preceding subsection, as to these 580 hours, Defendant need only pay the difference, if any, between the rate paid and the court-awarded rate. As to the remainder of the hours claimed by Plaintiffs, Defendant maintains that the hours "are unreasonable and should not be paid at any rate." (Def. Resp. at 12 (Doc. No. 870).) The court turns to Defendant's specific objections as to the hours expended.

Overall, Defendant complains that Plaintiffs' bills "provided insufficient detail to determine whether the fees were reasonable." (Id. at 5.) Defendant details twenty-four examples in Exhibit 6, where, for instance, the nature of the work performed is described as "File review" or "File organization and review." (Def. Ex. 6 (Doc. No. 870-2)); (see also Def. Resp. at 6, last paragraph, citing examples from Exhibit 6 (Doc. No. 870).) Having reviewed Defendant's Exhibit 6, the court agrees with Defendant that Plaintiffs' description of the work performed is not sufficient to meet Plaintiffs' burden of proving

entitlement to these fees.[7] Norman, 836 F.2d at 1299; see also Wyatt, 67 F. Supp.2d at 1345 (fee movant's burden "includes . . . maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity"); (Letter memorializing fee agreement (Def. Ex. 1 to Doc. No. 870).)  These hours total 84.2 and will be excluded from the fee award.

Defendant also objects to counsel for Plaintiffs' fees expended in January 2007 for preparing the instant fee motion.  (See Def. Ex. 5, objecting to "any fees for work performed after the dismissal of the consent decree" (Doc. No. 870-2).)  The court finds that the Eleventh Circuit's opinion in Thompson v. Pharmacy Corp. of America, Inc., cited by Plaintiffs, forecloses this argument.  See 334 F.3d 1242 (11th Cir. 2003). Thompson held that a statutory fee award encompasses payment for "reasonable efforts to pursue those statutory fees."  Id. at 1245.  Wholesale exclusion of fees for making and defending a request for fees, as urged by Defendant, is not warranted.  No other objection to the reasonableness of the quantity of hours has been made by Defendant, and the court finds that the requested payment for 54.62 hours Plaintiffs' counsel expended while pursuing fees is reasonable and compensable.

---

[7] In their Motion, Plaintiffs attempt to clarify the nature of some of the disputed fees set out in Defendant's Exhibit 6 (see, e.g., Pls. Mem. of Law at 18 (Doc. No. 852)), but the court finds that Plaintiffs' explanation still lacks the clarity needed for the court to ascertain whether the tasks warranted the number of hours expended.

Defendant objects to all hours claimed for Ms. Neiswender (111.15 hours), Ms. Bower (3.8 hours) and A. Zimmerman (.75 hours).  (See Def. Resp. at 8-9 (Doc. No. 870)); (Pls. Mem. of Law at 6-7, 15-16 (Doc. No. 852)); (Pls. Reply at 3-4 (Doc. No. 872).)  The court is not persuaded by Defendant's primary challenge, which is that the fees should be denied because these individuals are not "attorneys of record."  (Def. Resp. at 8-9 (Doc. No. 870)); see Hulex Music v. Santy, 698 F. Supp. 1024, 1034 (D.N.H. 1988) (rejecting argument that attorney was not entitled to his fees because he "was not plaintiff's attorney of record"; "[t]he work . . . was for the benefit of plaintiffs and necessary to the prompt resolution of their lawsuit").  Ms. Neiswender and Ms. Bower, both of whom are attorneys, performed research and writing tasks in rebuttal to Defendant's then-pending motion to terminate the Consent Decree.  (See, e.g., Pls. Mem. of Law at 15-16 (Doc. No. 852).)  As to Zimmerman, Plaintiffs represent that he/she is an associate with Hogan & Hartson, a law firm which has been involved in this litigation for many years.  Zimmerman performed limited work in this case during the same time frame as Ms. Neiswender and Ms. Bower, spending .75 hours in January 2005 retrieving cases and checking "Key Cites."  (Pls. Ex. D-7); (Pls. Reply at 3 (Doc. No. 872).)  The court cannot say that the use of additional attorney time, during what was a critical phase of the litigation, is unreasonable.  Moreover, there is no argument from Defendant or any indication from the record that the time billed was duplicative or excessive.  See ACLU v. Barnes, 168 F.3d 423, 434-435 (11th Cir. 1999); (see also Pls. Mem. of Law at 15-16 (Doc. No. 852).)

Finally, Plaintiffs point out that Defendant objects to Plaintiffs' requested payment for 10.5 hours expended for counsel to respond to a motion to intervene. (Pls. Mem. of Law at 17.) The court finds that the authority relied upon by Plaintiffs supports their argument that these hours should be compensated. See Dillard v. City of Foley, 995 F. Supp. 1358, 1371 (M.D. Ala. 1998). The court also finds that the hours expended are reasonable in number. Defendant has not provided any argument or authority to the contrary. (See generally Def. Resp. (Doc. No. 870).)

The court now has addressed all of Defendant's specific objections raised in his brief. The court is mindful that there are other general fee objections which are buried in the hundreds of pages of exhibits, but which are merely alluded to or omitted altogether in Defendant's brief. For example, Defendant states that Exhibit 6, discussed above, "contains only a few examples of insufficient explanations of Plaintiffs' counsel's work." (See Def. Resp. at 5 n.2 (Doc. No. 870).) Defendant then invites the court to review "Plaintiffs' Exhibits D-1 through D-50 for more complete information," (id.), the courtesy copies of which fill up two expandable file folders, measuring more than four-inches in thickness. On this record, the court declines Defendant's invitation to scour Plaintiffs' lengthy exhibits in search of fee requests which potentially could fall within the ambit of Defendant's general objections. There is authority that "generalized" objections to fee requests typically are "viewed as fatal" and that, "unless clearly non-compensable, all hours as to which [a] defendant[] ha[s] not made a sufficient

11

objection should be accepted." American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F. Supp.2d 1301, 1314-15 (M.D. Fla. 2003).

Here, having reviewed the fee petition as a whole, the court is persuaded that the remaining hours claimed by Plaintiffs are not "clearly non-compensable." Id. More significantly, though, given the court's familiarity with this litigation and with the proceedings which were occurring during the times when Plaintiffs' billing hours peaked, the court finds that these remaining hours comport with "what the Supreme Court has termed 'billing judgment.'" American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). In short, the court finds that the billing hours not specifically discussed in this opinion are acceptable, reasonable and compensable.

*3. Lodestar and Conclusion*

As detailed above, Plaintiffs are owed some, but not all, of the attorneys' fees they request for their services performed between October 2004 and January 2007. The manner in which Plaintiffs and Defendant have presented the attorneys' fees dispute, however, makes it extremely difficult, if not impossible, for the court to provide a bottom line figure of Plaintiffs' recovery of attorneys' fees by multiplying the reasonable hourly rates by the hours expended. The court, though, is confident that its rulings as to the allowable hourly rates and recoverable hours will permit Plaintiffs and Defendant to apply those figures to the disputed fees in order to ascertain the lodestar, which the court

finds is the reasonable attorneys' fee award in this case, and then to calculate the remaining unpaid fees owed to Plaintiffs' counsel.

## B. Expenses

Plaintiffs seek expenses incurred between October 2004 and January 2007. (See Pls. Mem. of Law at 32-36, citing Pls. Ex. C (Doc. No. 852).) The contested expenses fall into the categories of expert fees, travel, computer research and copying. (See Pls. Ex. C.) The court addresses each in turn.

First, as pointed out by Plaintiffs, Defendant has refused to pay the fees of their non-testifying expert, Mr. George Taylor. (Pls. Mem. of Law at 16-17 (Doc. No. 852)); (see also Pls. Reply at 4-5 (Doc. No. 872).) Those fees total $15,468.75. (Pls. Mem. of Law at 33 (Doc. No. 852).) In his Response, Defendant has not addressed Plaintiffs' argument with which, as explained below, the court agrees.

The Consent Decree expressly addresses the issue of the recovery of expert fees. Namely, it provides that Plaintiffs' attorneys are "entitled" to reimbursement from Defendant for "expenses," including "the fees and expenses of expert witnesses." (Consent Decree ¶ 90 (Doc. No. 235)); (see generally Def. Resp. (Doc. No. 870).) Not only does the Consent Decree permit Plaintiffs to recover expert fees, but it also provides that expert fees incurred by Plaintiffs for the purpose of "opposing efforts by defendant or others to modify or vacate this decree or the Implementation Plan" are recoverable. (Consent Decree ¶ 90); cf. Sierra Club v. Hankinson, 351 F.3d 1358, 1364 (11th Cir.

13

2003) (holding that plaintiffs could recover fees for non-testifying expert witness who helped monitor the "highly technical" consent decree).

The purpose for which Plaintiffs retained Mr. Taylor is one expressly permitted under the Consent Decree. Mr. Taylor, for instance, submitted an affidavit in support of Plaintiffs' opposition to Defendant's first motion to terminate the Consent Decree and Implementation Plan. In fact, in its Memorandum Opinion and Order denying Defendant's motion, the court cited Mr. Taylor's affidavit and ultimately reached the conclusion urged by Mr. Taylor. See R.C. v. Walley, 390 F. Supp.2d 1030, 1042 (M.D. Ala. 2005). Stated differently, the court finds that Mr. Taylor's work was "relevant to the rights established by the decree and related to the terms of the judgment." Sierra Club, 351 F.3d at 1361. Moreover, the court finds that the total fee, which breaks down to an hourly rate of $93.75, is reasonable. Accordingly, the court shall award the expert fees in the requested amount of $15,468.75.

Second, when billed, Defendant objected to Plaintiffs' expenses incurred for computer research, stating, for instance, that computer research should be part of a firm's overhead. Defendant, though, has not addressed or elaborated upon his objection in his Response to Plaintiffs' Motion, (see generally Def. Resp. (Doc. No. 870)), and, after careful consideration, the court concludes that the law is not on Defendant's side. (See Pls. Mem. of Law at 35-36 (Doc. No. 852) (collecting cases).) Having considered the relevant legal authorities and having reviewed the charges, the court finds that the expenses incurred by Plaintiffs for computer research are reasonable and minimal.

Accordingly, Plaintiffs are entitled to recover $508.03 for these disputed expenses. (See, e.g., Pls. Ex. C, containing line items for computer research).)

Third, as correctly pointed out by Plaintiffs, reasonable travel expenses of out-of-town counsel are recoverable pursuant to the Consent Decree. (See Consent Decree ¶ 90, stating that "expenses" include "plaintiffs' counsel's travel expenses (including the expense of lodging, meals, and transportation while away from home")); (Pls. Mem. of Law at 33 (Doc. No. 852)); see, e.g., Richlin Sec. Service Co. v. Chertoff, ___ S.Ct. ___, 2008 WL 2229175, *8 n.9 (2008) (noting that reasonable travel expenses are recoverable pursuant to 42 U.S.C. § 1988). The objection by Defendant is not that the disputed travel expenses, totaling $5,967.83, were unreasonably incurred, but that they were not "adequately documented." (Def. Resp. at 10 (Doc. No. 870)); (Pls. Mem. of Law at 33 (Doc. No. 852).) For example, Defendant points to Mr. Nazarian's bill for travel between Baltimore and Montgomery in December 2004 and January 2005. (Def. Resp. at 10 (Doc. No. 870).) Defendant says that DHR refused payment because "[t]here were no receipts or vouchers to document this travel[.]" (Id. at 10-11.)

The court carefully has considered Defendant's objection concerning the lack of documentation and does not condone Plaintiffs' failure to resolve this dispute without court intervention. (See id. at 11.) The court, though, declines in this particular instance to penalize Plaintiffs by denying the travel expenses because the court finds that the record is sufficiently detailed as to the nature and purpose of the expenses. More specifically, the court finds that the travel directly assisted Plaintiffs' monitoring and

15

implementation efforts.  (See Consent Decree ¶ 90.)  As represented by Plaintiffs, Mr. Nazarian's travel in December 2004 was for the purpose of attending a status conference ordered and held by the court.  (Pls. Mem. of Law at 33-35 (Doc. No. 852)); (see also Minute Entry (Doc. No. 723), noting Mr. Nazarian's attendance at the status conference)); (see also Order (Doc. No. 724), granting Mr. Nazarian's motion to appear *pro hac vice*.)  Additionally, the objected-to travels in January 2005 pertain to the attendance of out-of-town counsel (Mr. Nazarian and Ms. Nieswender) at a meeting which the parties agreed to convene in order to address the problem areas identified by the court.  (See Order (Doc. No. 725).)  Furthermore, the court finds that these attorneys, who were brought in at a critical phase (see Pls. Mem. of Law at 34 (Doc. No. 852)), possessed specialized skills in the subject matter of this litigation and that each was able to offer unique and distinct expertise in relation to Plaintiffs' monitoring and implementation duties.  The court finds that "[t]his is not a case involving unreasonable or uncalled for use of distant lawyers."  Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).  Additionally, as noted, no objection has been lodged that the airfare rates and related travel expenditures were unreasonable or excessive in amounts.  For the foregoing reasons, the court finds that Plaintiffs' requested travel expenses in the amount of $2,419.07 ($1,138.89 plus $1,280.18) are reasonable and recoverable.

    In his Response, Defendant also generally states, without any specificity or citation to the thick record, that DHR did not pay other travel expenses for attendance at meetings by multiple attorneys, for inaccurate travel distances, or for hotel and/or meals

which exceeded the state *per diem* rate.[8]  (Def. Resp. at 10 (Doc. No. 870).)  Again, the court will not take on the task of searching hundreds of pages of exhibits to ascertain exactly which expenses and which portion of those expenses fit Defendant's general objections.  The general objections, thus, are overruled.  In sum, as concerns travel expenses, Plaintiffs are entitled to recover $5,967.83.

Fourth, according to Plaintiffs' calculations, there remain unpaid copying expenses in the amount of $14,647.90.  (See Pls. Ex. C, listing expenses requested by Plaintiffs, but rejected by Defendant).  Defendant, on the other hand, states that DHR "has always paid . . . for reasonable photocopying expenses."  (Def. Resp. at 11 (Doc. No. 870).)  Defendant sets a ceiling for reasonable charges at $500 per month and argues that photocopying charges which in any month exceed $500 are "excessive" because Plaintiffs did not provide any justification for the expenses.  (Id.)  By the court's calculation, the months in which copying charges exceed $500 and to which Defendant objects are as follows:  August 2005, September 2005, October 2005, January 2006, March 2006, April 2006, May 2006, June 2006 and August 2006.

Plaintiffs' billing statements merely specify for each month the "number of copies," the "rate" and the "total" cost.  (See, e.g., Pls. Ex. D-36, billing for copying expenses for April 2006.)  Absent any indication of the nature or purpose of the photocopying, there is no way for the court to discern whether the copying costs are

---

[8] The court notes that the State of Alabama pays actual expenses for out-of-state travel.

17

reasonable and, thus, recoverable.  See Fulton Fed. Sav. & Loan Ass'n of Atlanta v. American Ins., Co., 143 F.R.D. 292, 300 (N.D. Ga. 1991) (explaining that party seeking to recover copying costs must provide evidence of the nature of the documents copied and how they were used).  The only explanation Plaintiffs give is contained in their reply brief in which they represent that they distributed courtesy copies to "opposing counsel and the Court Monitor" of their 469-page May 18, 2006 submission.  (See May 18, 2006 Submission (Doc. No. 820)); (Pls. Reply at 6 (Doc. No. 872).)  There were multiple defense attorneys, though, and Plaintiffs do not state how many courtesy copies they generated.  Plaintiffs add also that they "routinely distributed copies of court orders, Monitor's reports and pleadings to various Alabama stakeholders such as families, foster families, juvenile judges and services." (Id.)  Moreover, Plaintiffs represent that, during most of the months to which Defendant objected to copying costs, they "were engaged in discovery and responding to Defendant's motions to terminate."  (Id.)

From the foregoing, the court finds that Plaintiffs have provided some justification for the photocopying costs, but not justification for the entire requested amount of $14,647.90.[9]  Recognizing that Plaintiffs necessarily incurred some amount of photocopying costs, the court will allow Plaintiffs to recover $500 for each month in

---

[9] For instance, the court agrees with Plaintiffs that expenditures for providing courtesy copies are reasonable.  (See Pls. Reply at 6 (Doc. No. 872).)  Indeed, the courtesy copies the court received in this case were very helpful.  The court, thus, is not persuaded by Defendant's argument that the court's electronic filing system renders any photocopying expenses for courtesy copies excessive.

which Plaintiffs billed charges exceeding $500 to which Defendant objected, $500 being the amount to which Defendant has agreed, as set out above.[10]  During the relevant time period, there are nine objected-to months in which photocopying expenses exceeded $500, meaning that Plaintiffs can recover photocopying expenses during the disputed period in the amount of $4,500.

Relatedly, Defendant argues that Plaintiffs' rental of two copiers in 2006 to assist Plaintiffs in conducting the SEBD review in Jefferson County is unreasonable because DHR offered an alternative to Plaintiffs, that is, to provide a clerical worker who would make a "limited number of copies" for Plaintiffs.  (Def. Resp. at 11-12 (Doc. No. 870)); (Pls. Ex. D-35.)  The court, though, cannot say that Plaintiffs' decision to reject Defendant's offer of providing "limited" copies was unwarranted, and, under the particular circumstances, the court finds that the expense for renting copiers is reasonable.  The disputed $521.91 for copier rentals, therefore, is recoverable.

In sum, the court finds that Plaintiffs are entitled to recover as reasonable expenses (1) $15,468.75 for expert fees, (2) $508.03 for computer research, (3) $5,967.83 for travel expenses, and (4) $5,021.91 for photocopying and copier rentals.  The recoverable expenses total $26,966.52.  The remainder of the expenses claimed by Plaintiffs is not recoverable.

---

[10] The court notes that its calculation is different from the one urged by Plaintiffs. (See Pls. Reply at 6 (Doc. No. 872).)

19

## IV.  ORDER

It is CONSIDERED and ORDERED that Plaintiffs' Motion for Attorneys' Fees be and the same is hereby GRANTED in part and DENIED in part and that Defendant is hereby DIRECTED to pay Plaintiffs' attorneys' fees for October 2004-January 2007 in an amount consistent with the court's ruling herein.

It is further CONSIDERED and ORDERED that Plaintiffs' Motion for Costs be and the same is hereby GRANTED in the amount of $26,966.52, for which let execution issue.

Done this 23rd day of June, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE